Attorneys who are going to orally argue, please step up and introduce yourselves to the court. Clerk, please call our case. Those who are going to argue, please step up and introduce yourselves. Good morning, your honors. My name is Paul Rissett and I represent the state. Good morning, your honor. For the record, attorney Jim Pittacora, P-I-T-T-A-C-O-R-A, on behalf of Lovejoy de Mesa. Very good. Okay, both sides will be allowed a total of 15 minutes to argue. Of course, the appellant, you'll want time for rebuttal. You must allot from your 15 minutes whatever time you're going to use for your rebuttal, okay? Okay. The appellant, you may proceed. Thank you. Good morning, your honors. May it please the court, counsel. My name is Paul Rissett. I'm an assistant attorney general for the state of Illinois, and I represent the Illinois Department of Financial and Professional Regulation in this appeal. This is an administrative review matter in which the circuit court remanded for a new hearing regarding the appropriate sanction to be placed on the nursing license of a registered nurse for a felony conviction and for failure to report that conviction to the department. The circuit court remanded for a new hearing for two reasons. The first was that the ALJ denied de Mesa's request to call the department's attorney as a witness at the evidentiary hearing, and the other reason was that the department did not give copies of its decisions in similar circumstances in response to a discovery request that was filed by de Mesa. What's the standard of review? Your standard of review for reviewing what the circuit court did is abuse of discretion. Abuse of discretion? But it's a little more complicated here because the circuit court was supposed to apply the abuse of discretion standard to what the ALJ did because these were both evidentiary rulings. So while you do that, in considering whether the circuit court abused its discretion, you should consider, you know, whether it was appropriate for it to reverse applying the abuse of discretion standard to what the ALJ did. And, of course, the ALJ only ruled on the witness issue. It never ruled on the discovery issue because that issue was never presented to the ALJ. So for that, it's very difficult to say what the standard of review is because the issue is forfeited. As you mentioned, counsel, the trial court in this case remanded for a new hearing. Correct. Apparently in front of a different ALJ that wasn't going to die. He never did then, because he shouldn't have, address the proper sanction, right? The issue, as you say, was taint right, taint fair. Geez, one year or more suspensions. He was awfully harsh since the meeting. That's the argument of the nurse. Right. He never got to that. He said, you know, I'm not going to say what's fair. I'm going to send it back for a do-over. Right? Of the circuit court? Yeah. The circuit court did not reach the merits of whether the division director abused his discretion in setting this sanction of a minimum one-year indefinite suspension, because he said she should be allowed to have a new hearing where she can call the department's attorney as a witness and that she should have these other decisions released to her in response to her discovery request. So, right. So we are asking as part of our relief that if this court finds that the remand to the department was improper, that it should itself review the division director's decision to impose the, rather than send it back to the circuit court, which is really just functioning as a reviewing court in an administrative review action. It's not functioning as a fact finder. It's just reading the same record that you would be reading. So what's the other side of that? Why shouldn't we not send it back to the circuit court to have whatever input there is as to the proper sanction? Let's assume that I agree with you on the evidentiary issues, that she shouldn't have been able to call the prosecutor or the AG, and she shouldn't, the other problem, they shouldn't have been able to do that. Ordering your office to go through your records when they're sitting out on a counter somewhere. Correct. Let's assume we agree with you. Why shouldn't we send it back? It would just be in the interest of judicial economy, Your Honor. You could certainly send it back if you saw fit. We just think the case has been dragging on for a number of years. It's something that DeMais has complained about, in fact. So why not just end it at this point? Is she currently suspended or no? No, she had a stay granted by the circuit court. So she's never been suspended for one day, either in the earlier case. On the consent she was, right? Ten days or whatever it was? No. Four days? No, the consent was just a reprimand. Okay. That's the very lowest sanction that's possible to be imposed. As long as you mention that, then when she was convicted of, convicted of, no, not anything else, was the department was aware of what she was charged with. I shouldn't say that because the indictment came a few days later. She did indeed, the department initially did reprimand her for what she ultimately pled guilty to. Is that right? Well. Removing a breathing device. Both the, the first administrative proceeding was based on unethical, dishonorable, or unprofessional conduct, and that arose out of the same set of facts, removing the respirator from the six-year-old disabled girl as the criminal case also arose out of. Were the other 18 charges, well, actually it would have been 18 indictments, 36 charges, did they reflect the same, the ones that were dismissed, did they reflect the same conduct? They all arose out of the removal of the respirator from the girl, although I do believe that they were for multiple occurrences of removing the respirator. I don't think they would have charged 36 counts for one removal of the respirator. You know, the record is very limited because the only things that we have from the criminal court is the sentencing order and the discharge from probation. But from my understanding of the case, you know, the parents used the nanny cam and saw that she had removed the respirator a number of times. Same child? Same child, yes. All right. So she hadn't pled guilty on the other one yet, so there was only the one issue at that time. Right. And, of course, first of all, we don't control the speed that the criminal case goes. So, and, in fact, she didn't plead guilty until almost a year after the informal conference. Plus, there might not have been a conviction. The state's attorney might have dropped the charges. She might have been acquitted. And in a case like that, there would have been no conviction and there would be no need to report the conviction. So in a case like that, you know, it never would have been an issue, the other two violations of the act. Well, she actually, in the consent order, she waived everything in terms of having all of these charges made official and being filed. And the way I read the conclusion is that the department is free to do anything following the consent order involving disciplinary measures. So there's nothing that precludes any further action against her based upon the consent order? That's correct. And, you know, they are separate occurrences because if you look at that section of the Nurse Practice Act that sets out the grounds for discipline, they could all be brought at the same time if the department chose to wait until after the criminal case was resolved, but it doesn't have to. And they are separate. And both the ALJ in denying the motion to dismiss and the circuit court recognized that there's no, you know, double jeopardy problem, even though double jeopardy doesn't apply to administrative proceedings because the elements were different. And, I mean, someone can commit unprofessional conduct such as having an affair with a patient and that's not criminal, and someone can also commit criminal conduct that has nothing to do with the patient like a felony DUI or whatever. So there can be all sorts of categories where there is overlap and there isn't overlap. But in this particular case, the first proceeding only had to do with whether removing the respirator was unprofessional, unethical, or dishonorable conduct. And that's all that was resolved. And it was resolved through settlement negotiations and a consent order. So there was no ALJ hearing on that, and it didn't go up through the Board of Nursing and the division director with findings affecting conclusions of law like this. The second administrative proceeding did with both the felony conviction and the failure to report the felony conviction. So... Go ahead. I know I'm almost running out of my time already. Regarding calling the department's attorney as a witness, I think it should be noted that there was no formal request to call her as a witness at any point prior to the evidentiary hearing. Although she did list the department's attorney as a potential witness in a list of seven in response to the department's discovery request, she never filed a request to produce the department's attorney at the hearing as the department did in regards to DeMesa herself. She never sought a subpoena compelling the department's attorney to testify, and she didn't request a hearing under the advocate witness rule, which would have required the ALJ to decide whether this is one of those unusual cases where the attorney must testify, even though representing a party in the case, because the testimony is absolutely necessary and there's no one else from which the testimony can be obtained. Here she just wanted the attorney to corroborate her own testimony, and it was about stuff that was undisputed. Cooperation. Correct. Correct. But there was no conflict because no one was denying what DeMesa said. DeMesa said that at the settlement conference, the underlying conduct of removing the respirator was discussed, which we don't dispute, and also that the department knew that she had been arrested and that charges were pending, which we also don't dispute. So the attorney's testimony would have added nothing that would have been relevant. It's a rare event where an attorney is called upon to be a witness in the case. It is, Your Honor. Okay. But the court does have the power, if they deem it necessary, for the evidence that the attorney testified. Correct. If there's no other source for the ---- In essence, isn't that what the circuit court did when it determined that the attorney should have been called? He didn't say there was no other source. He just said that because DeMesa was a layperson, that it might be helpful. But it really ---- I was having trouble following that logic, because really if you look at this case, she admits both things, that she was convicted of a felony and that she didn't report the conviction. So the only thing that's relevant as to what the sanction should be is what her state of mind is, which is something that the department's attorney would not have any input into. DeMesa's two reasons for not reporting were that she said she didn't know that she had to report, but ignorance of the law is no excuse, and also that she thought that the department already knew about the convictions. Well, the department couldn't have known about the convictions because they happened a year later. I mean, they knew that criminal charges were pending, but they didn't know whether she would be acquitted or whether the charges would be dropped. Plus, the legislature has placed the affirmative duty on the nurse to report the conviction, and it doesn't have an exception that says she doesn't have to report if the department already knows about it or if a third party, such as the prosecutor here, informs the department of the conviction. So really this was a red herring to go into even what the attorney for the department knew, and it wouldn't have helped her case in any meaningful way. Plus, being highly unusual, and she didn't even explain the reasons to the ALJ before his ruling as to why this testimony was supposedly needed. Unless the court has further questions, I would like to save a couple minutes for rebuttal. Thank you for coming. Thank you, sir. Thank you. May I have a question? You may. Once again, for the record, Attorney Jim Pittacora on behalf of Ms. DeMesa, who is now present in court, my co-counsel, Mr. Michael Palermo. Judge, I've been involved in this case since the beginning regarding the DPR action against my client, Ms. DeMesa. She's a former prosecutor for 13 years at DPR, a medical and nursing prosecutor. When we had the initial conference with the nursing board, with my client, every one of the allegations regarding the criminal action was discussed with a member of the nursing board, Beth Nussbaum, who is a prosecutor with DPR, as well as with my client. My client had gone into great detail about her conduct pertaining to the six- or seven-year-old child that was on the respirator. The nursing board, the reason they recommended a reprimand was solely because they only felt that the only improper conduct was that she did not have a doctor's order specifying to take the child off the respirator, even though a lot of times they will do that to try and strengthen their breathing. But that was the basis of the felony conviction. Correct, Your Honor. But what happened was, even at the criminal level, she pled guilty to one felony count for 24 months' probation. My client did not spend any time for hurting a six- or seven-year-old child in DuPage County. Your work was done very well. The consent order was entered four days after the other charges were dropped by the State. I understand, Judge. But one of the things that we are trying to establish, in addition to the sanction being too harsh, is that the Department was well aware of the pending matters. What difference would that make? The statute doesn't say, as Mr. Assett just said, nurses and all professionals are required by statute to notify the Department of Professional Regulation if they're convicted, unless the Department already knows about it. They don't have that last five words, right? Correct. They're ordered to do it. Correct. It's a statute. So the fact that they should have known about it, and what's that got to do with it? It's a matter of semantics, Your Honor, as far as six of one, half a dozen of the other. And the fact that, to say that, gee, we were never put on notice when, in fact, we had to. I mean, this is a statute. Are we supposed to abrogate the meaning of the statute? Judge, I'm just saying that the Department, all these allegations were discussed in great detail with a member of the Department and the Nursing Board during the conference, which they solely recommended a reprimand for. That was before the conviction. And conviction didn't come until later. And so that was the time that her responsibility to report this began. And she filed in 2008 to preregister, but she never mentioned it. And the only way it came to the attention of the State was through the State's attorney. Now, if you have a system that does that, how do you assure that the statutory requirement is being met? And how could she not know it after she had been shepherded by you through the entire process with having the charges disposed of and entering into consent? Your Honor, first of all, the application that we're discussing for her renewal of a nursing license was never admitted into evidence. We don't have that as any part of the record in this case. So we do not know what is actually in there. So, and during At page 11, you're right. You actually sat down at a machine and wrote this, or somebody did. What indictments? There are none in the record, nor any testimony about indictments. None at all. Not one single indictment. It is outrageous that the Department would lead this Court to believe that there was such evidence. That's at page 11. At page 5, you say, by the way, Ms. DeMesa was charged and convicted of whatever she was convicted of. She got sentenced to two years' felony probation. I take it she was arrested at some point? Correct. And then when she was arrested, was that with a complaint for preliminary examination attached to it or just an arrest warrant? She was just asked to surrender, Judge. Okay. And then sometime after that? She served four days waiting to get bond money, Judge. It was not at the end of her sentence where they said, all right, in addition to probation, you're going to serve an extra four days. That's because it took time for her to get bond money. And after that, she was released immediately. She completed her probation without issue. But she served two years' felony probation. She pled to it. She asked to be given two years' felony probation with the promise she would obey the rules of the Court. And she did apparently obey the rules of the Court. Correct. That would have to be done, though, in Illinois, pursuant to either a preliminary hearing or an indictment. So there was an indictment. So at page 5, you were forthright. There's an indictment, and as you say, try to put it in the best light you can. She took two years' probation. She only got time served. Nobody suggested she belongs in jail on this. And then at page 6, you claim to be outraged that they're essentially lying, that the Department is making things up. I suggest to you, I'm not asking for a response. Sorry. Don't do that. That's not right. It's not right to pretend to be outraged about something you already said existed six pages earlier. It's just not right. It doesn't help your cause. Now let's move on to a question. You pointed out, as I asked Mr. Rousset, did the trial court consider the plea of Mr. DeMesa for mercy, that this was they consider the fact, what was actually in front of him, which is was the sanction too severe? Did Tom Allen ever reach that, Judge Allen? What happened, Judge, was that's why he remanded it back, to find out if we can receive some sort of evidence from the Department that this discipline is consistent with discipline that they had merited out in the past. It was remanded for that reason. And under what theory can a circuit court judge order that kind of discovery in this kind of a case? Because, again, I take it you do this as a line of work, do you not? You represent other professionals in front of the department. Sometimes, Judge, yes. I mean, not a lot. I don't mean to insult you. I mean, I know what you're doing. You do. It's a well-written brief, other than overstepping the bounds. You know what you're doing, which is something we don't always see. But knowing that, then, is there a case that says a trial court should be able to order such a thing, that they should tell the department, by the way, you are the ones who know all the cases you've brought. You're to disclose to the professional who's being charged all the people you've charged with anything remotely similar and what occurred to those cases. Is there a case out there, a court of review saying that? None that I can find, Your Honor. So we should be the first? Judge, based upon a sentence being too harsh or an unconscionable sentence. But he never reached that. And that's not what this was, right? But he actually says, start over. He doesn't say, well, I think she got a horrible break. Well, she could have. Judge Allen, the question really in front of Tom Allen was, is this fair? Did she deserve to have her license suspended for at least a year, if not forever? Or anywhere from a year to God only knows when. And his answer was, I'm going to have a do-over. I want a new ALJ in here. And I'm ordering the department to turn over any records they have to do, as they say, they put it to do your research for you. They're to go do this, run through their records and give you what they think is appropriate. We would have been happy to do that based upon the fact that it's an antiquated system at DPR. And we were more than willing, Judge, our discovery request was not met by the department. And no access to any discipline through the department was given to us, which we requested to show consistency. I didn't see that stated that way in this report. And what counters it also is your opponent, the state, is saying, you're making us do all the work. These are all public records. You could go in there and look at them at any time. The door was unlocked. You could have been in there. And they're saying what you're really asking for is for the state to do all the work for you, to ferret out what you might need to defend their charges. That's how I read this record. Nothing precluded you. What would have stopped you from issuing a subpoena? Judge, the only issue regarding that is the department had prosecutors that have had recent cases that was accessible to them regarding unprofessional conduct, regarding criminal convictions, to find out whether or not the sanction was unduly harsh. Does one size fit all? You have an individual client whom you're interested in. And are we just going to have, okay, you're in silo A, you're in silo B, you're in silo C? Is it a going rate? No. So each case is different. And we're listening to your client's case on the merits as it relates to her. And so other dispositions relate to other people's conduct, could have other nuances, other rules that apply, and you're asking for a one size fits all. I don't know how you'd do it, let alone why it would be required that you wouldn't do it yourself. Your Honor, may I respond briefly? Sure. That's a great point. The judge who saw my client's demeanor, the judge who witnessed how she was, how we presented our case, he died. And the judge who ruled on this never had a chance to see anything. All he did was read a report. He was not the judge present. Judge Canavan passed away prior to this. I saw it in your briefs, but the two core issues here are calling Ms. Nussbaum and you getting discovered. And Ms. Nussbaum should have been called as a witness, as you know, Your Honor. In a criminal case, when the State turns over their discovery, they list 15, 20 police officers that may be called. Ms. Nussbaum was on that list. Maybe. And we don't know how we're going to proceed on the case until we watch the case unfold. But then the way you did it, she'd become your own witness and you'd be held to her testimony. We would have been more than happy. Wouldn't she have to be removed from the case then? She should have been. Did you file a motion saying that she should be removed from the case because you wished to call her as a witness? We talked to her supervisor regarding that issue and told them in advance that she was going to be. So I take it the answer is no. You didn't file a motion. No. Okay. Having been a prosecutor for 16 years, it's easy for a defense attorney to say, I'm going to call you. Well, okay. Double dog dare you. File a motion. And they never file a motion. It's just very common. And it's not the way to practice. Just a suggestion. I understand, Your Honor. Call the other side's prosecutor. Okay. But, Your Honor, she was put on, she was on the list of our witnesses. She was. From the very beginning, they knew that we were going to call her. It was conditional. We may call her. And what is she going to offer other than what was already known? As Mr. Winters already said, the fact that they were aware that there were criminal charges pending at the time, of some kind, at the time of the consent. And that she cooperated with the investigation. Your client said that. Because it was true. Mr. Mason was in line. And nobody questioned that. Because she was cooperating. Yes. So then what does she add? What does Nussbaum add to this? Beth Nussbaum would testify that, in fact, during the conference, all these issues were addressed. Beth Nussbaum would testify. Her signature is on the consent order stating that my client was not. Would that really be admissible? Settlement negotiations? The consent order, Judge, would be admissible. What resulted in settlement, the settlement matters, they're generally inadmissible. Only under the most unusual circumstances would they be used. Not necessarily for that point, Your Honor. To put in there that in the consent order, the body of the order, it states that no harm to the public took place. And that they did not feel that my client was harmed to the public. That was her signature. That was her that levied the sanction of a reprimand after this whole situation. And now they want to change it to a year indefinite suspension for the same set of facts that Ms. Nussbaum said should be a reprimand, a slap on the wrist. A different offense in that she did not, and again, not to blame you, counsel, she had counsel, for failing to do what she's obligated by statute clearly to do, which is after your case is over, if you lose and if you're convicted of a felony, but not if you're found not guilty or convicted of something else, you are obligated to notify us. And she didn't do that. And you say that again. You're up front in your beginning of your brief, by the way. There was no dispute about that. Right? There's no factual dispute about it. There are two different cases here. So that was one case and this is another. Right? How does it fit? Well, Judge, first of all, getting back to the one issue as far as the judge in the case who witnessed it never had a chance to file his report. He never had a chance. The nursing board did have a chance to give their recommendation. All right? They recommended a seven-day suspension for her. Judge Canavan never had a chance because he had passed away. And now a judge who didn't even sit in on the case is going to sit there and pass judgment on my client when he wasn't even there for the original case, Your Honor. The determination was that it was an indefinite and she could have been done with it in four days, six days. It was a one-year, but it was an indefinite suspension. In other words, it had a time that it eclipsed. But in the meantime, it could have been changed at any time. It was a one-year indefinite, meaning a minimum one year beyond that. The initial sentence was seven-day definite suspension. It was not a seven-day indefinite suspension. It was a straight seven days. There was a big difference between, as you know, Your Honor, a big difference between the two. We're going back to not being able to see it. So Canavan dies and then Lega Tuta gets involved, the supervisor. Then you're asking Tom Allen, who didn't see these people, a true rule, right? And that's how our system is set up. So Tom Allen gets to decide what should happen. I mean, it's the circuit court judge. And he reads, right? He sits there and reads the stuff. I suppose you can call somebody about it for a review if nobody complained. But his job is, as our job is, we don't see people. I've never seen a witness in 17 years up here. We don't. We read. I understand. But Mr. Lega Tuta's job or the job of the department, the job of the nursing board, is to actually witness the testimony. It's not the job of Judge Allen. Merely his job is to decide whether it's proper or whether it should be remanded or not remanded, as you know. But it's different. Are there any cases? That's what we're always looking for. So if that's the issue, if the issue is when an ALJ dies before issuing a decision, are there cases that say it has to be a do-over or that it should be a do-over, meaning start over again? In criminal, that's absolutely a do-over. Take a bench trial and the guy dies. Well, guess what? You're on. Pick another judge. Pick a jury. Is there anything out there that requires that? Any suggestion? This is the first time I've known of an ALJ that passed the bench trial. I believe you. Fortunately, we didn't have that happen when I was there. So, but those are the issues. If I may just ask you, they suggest, Mr. Reset, suggest that we not send it back to the circuit court. This is so clearly a bad thing that's occurred. And if we disagree with your evidentiary disputes, we should just ourselves affirm what should we do? Should we send it back? Assuming we disagree with you, and I'm not asking you to concede. We should disagree with you on either of your arguments. But if we were, should we send it back or just rule from ourselves as to what should happen to Mr. DeMais? Judge, I think it should be, I think it would be best to be remanded back, honestly. I do. I do. Thank you. Thank you, Your Honor. Thank you, Judge. Thank you, Judge. Thank you. Thank you. I spent most of my opening on the calling the attorney as a witness issue. So just briefly on the discovery issue. When they asked for copies of those decisions, we filed a motion to strike that discovery request. They did not respond to that motion to strike. They did not file a motion to compel the release of these documents. And they never brought the issue up in front of the ALJ, not a peep. Then when we get to circuit court, suddenly it's grounds for reversal when there's nothing for the circuit court to review because the ALJ never ruled on it, the Board of Nursing never reviewed it, and the director never. So that issue is totally forfeited. But even if it weren't, the department's discovery rules are much more limited than they are in the circuit court, and they don't allow this sort of discovery. And we did invite them to come in, spend a couple hours looking through. They were looking for a very discreet period, just a five-year period. They were welcome to come in any time during office hours and look through the decisions. They chose to decline an invitation. So it was available to them, notwithstanding discovery requests? Correct. We said we're not required to give it to you. However, you can come in any time you want and look through the decisions yourself. And one, if not both, of them have worked at the department, so they're familiar with the department's decisions and would presumably be able to do that fairly efficiently. The other thing is they make an issue on appeal of the fact that the renewal application is not in the record, but there was no reason to put it in the record because DeMesa admitted under oath that she did not report on her renewal application that she was convicted, plus she repeatedly stated that she did not report it at any time in any way. So she never called the department. She never emailed the department. She never sent a letter to the department. And how hard is it to put in? You're essentially taking away the livelihood, and nationally, of a nurse for ability to work perhaps for the rest of her life. And yet to do this, it's just troublesome to file a piece of paper? Well, no, because liability or violations weren't at issue. She had admitted to both things. She had been convicted, and she failed to report. So the hearing was just on what the appropriate sanction should be. So at that point, we didn't need to prove that she didn't report because she was admitting it. It was almost like a sentencing hearing where you're just looking at should she get another reprimand, should she get a total revocation of her license, or should there be something in between like a suspension which was imposed here. The other thing is the issue about the ALJ passing away. That was not one of the reasons why the circuit court sent it back for a new hearing, number one. Number two, that's not an argument that they're making in their appellate brief. And number three, there were no credibility determinations to make because DeMesa was the only witness. And no one has even countered that her reasons that she gave were not truthful. She said, I didn't know I had to report, and I assumed that the department knew. We haven't said that she knew she had to report or she didn't believe that the department already knew. So why would the same ALJ, why couldn't any ALJ review that record and say, you know, we get that these are your reasons, but they're just not very good reasons. And therefore, we're not going to give you just a slap on the wrist for this. So just because the ALJ died, that is no independent reason for sending it back for a new hearing. Unless the Court has further questions, we would ask that you reverse the circuit court's order and then perhaps in your discretion reach the merits, although, again, that's at the court's discretion. And you would apply the same standard that the circuit court did, which is whether the division director abuses discretion in setting this particular sanction. Thank you. Thank you very much to both counsels. Your argument is appreciated. The matter is taken under advisement. Court is adjourned.